**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **C.F.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-529-CWB** |
| | ) | |
| **NANCY BUCKNER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

C.F.[1] ("Plaintiff") brought this action to assert claims against Nancy Buckner and Kim Mashego (collectively, "Defendants"), both individually and in their respective capacities as Commissioner of the Alabama Department of Human Resources and Director of the Shelby County Department of Human Resources.  (Docs. 1 and 18).  Plaintiff seeks declaratory and injunctive relief under 42 U.S.C. §1983, as well as monetary damages on state law claims for negligence and wantonness.  (*See* Doc. 18).  All claims stem from allegations that Defendants failed to afford Plaintiff a hearing in connection with a finding of child abuse/neglect.

Pursuant to 42 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of civil jurisdiction by a United States Magistrate Judge. (Docs. 13 and 14).  Now ripe for determination is a Motion for Dismiss (Doc. 20) filed by Defendants.  Upon review and consideration of the parties' arguments (*Id*.; *see also* Doc. 24), and for the reasons set forth below, the court finds that dismissal is due to be granted in part and denied in part.

---

[1] Plaintiff is being allowed to maintain her full name under seal.  (*See* Docs. 15 through 17).

## II.    Factual Background[2]

Defendant Buckner is the Commissioner of the Alabama Department of Human Resources. (Doc. 18 at ¶ 7).  In that capacity, she is responsible for establishing, implementing, and overseeing policies and procedures/rules and regulations for the Alabama Department of Human Resources and for ensuring its compliance with State and Federal legal requirements.  (*Id*. at ¶ 9). Defendant Mashego is the Director of the Shelby County Department of Human Resources (*Id*. at ¶ 8).  In that capacity, she is responsible for establishing, implementing, and overseeing policies and procedures/rules and regulations for the Shelby County Department of Human Resources and for ensuring that the Shelby County Department of Human Resources complies with applicable State and Federal legal requirements.  (*Id*. at ¶ 10).

Plaintiff received a letter dated December 2021 from the Shelby County Department of Human Resources informing her that the Alabama Department of Human Resources had completed its initial assessment on a report of suspected child abuse/neglect and had reached a conclusion of "indicated," *i.e.*, that there was more credible evidence than not that child abuse or neglect had been committed.  (Doc. 18-1 at p. 1).  The letter more specifically explained as follows:

> The department was able to find sufficient evidence to support the allegation of Neglect (Inadequate Supervision) against you, [C.F.], regarding the minor [K.F.] (2-6-21). You, [C.F.], allowed [N.F.] to have unsupervised contact including overnight[] visits with [K.F.] which violated the ISP dated 11-29-21 which acted as the court ordered visitation agreement.  Due to the lack of supervision [K.F.] suffered a Non-Accidental Head Trauma resulting in [N.F.'s] arrest.  Therefore, the final disposition of this investigation will be INDICATED.
>
> You have the right to an administrative record review.  This means that the county's written report will be reviewed by an independent panel of DHR employees who are not involved in the case.  The panel members will review the written report and make a final decision about whether the written report supports the finding.  The panel has the authority to overturn the county's decision if the documentation does not support the findings.

---

[2] The operative facts for purposes of evaluating the pending Motion to Dismiss are those gleaned from the Amended Complaint and the documents appropriately annexed thereto.

> If you want the decision reviewed by the panel, you <u>must</u> submit your written request to me at the Shelby County Department of Human Resources (address is above) within ten (10) working days from the date of receipt of the letter.  You may include any written information that, in your opinion, proves the findings are not true.
>
> If we do not <u>receive</u> a written request within the 10 working days, we will consider that you have given up your opportunity for a review.  At that time, the preliminary decision will become a final decision, and it will be entered into the Department's Central Registry for Child Abuse/Neglect.  This information is for the Department's records only and does NOT refer to any Criminal Charges.  Our records are confidential and may only be released according to State law.

(*Id.*).  Plaintiff alleges that in response to the letter she requested a hearing but that the request was denied.  (Doc. 18 at p. 6).

In a subsequent letter dated January 24, 2022, Plaintiff was informed that the "indicated" finding indeed would be added to the statewide Central Registry:

> We have completed our administrative record review. ...  It has been determined that the County Department does have enough credible evidence to support a dispositional finding of 'indicated', i.e. true.  This report will be entered into the Department's Central Registry on Child Abuse and Neglect as an 'indicated' incident.

(Doc. 18-1 at p. 2).  Plaintiff alleges that such listing on the Central Registry adversely affects her rights and that she has been stigmatized, slandered, and defamed as a result of the listing.  (Doc. 18 at p. 7).  Plaintiff further alleges that she faces a real, immediate, and concrete threat of future injury in that the listing will likely be released to third parties.  (*Id*. at p. 8).

In her First Cause of Action, which is styled as a "Claim for Relief Pursuant to 42 U.S.C. Section 1983," Plaintiff alleges that Defendants have established a custom, practice, or policy that has resulted in the systematic denial of hearings and/or other constitutionally adequate process by which "indicated" listings on the Central Registry can be challenged.  (*Id*. at ¶¶ 14-15).  As a remedy, Plaintiff seeks both declaratory and injunctive relief against Defendants in their official capacities:

(a) Issue declaratory and injunctive relief directing that Defendants Buckner and Mashego in their official capacities expunge, purge and remove from the statewide Central Registry all reports, names, information and data of any type relating to Plaintiff and, further, issue declaratory injunctive relief directing that Defendants cannot list Plaintiff's names and information on the Central Registry until such time as all due process rights and remedies available to deny, dispute and controvert the report, allegations and the disposition have been exhausted; and

(b) Issue declaratory and injunctive relief directing Defendants in their official capacities to provide to Plaintiff a hearing for the purpose of denying, disputing and controverting the report, allegations and "indicated disposition."

(Doc. 18 at pp. 12-13).  In her Second Cause of Action, styled as a "State Law Claim for Negligence/Wantonness," Plaintiff seeks compensatory and punitive damages from Defendants in their individual capacities as a result of being listed on the Central Registry.  (*Id.* at ¶ 26).[3]

### III.    Statutory and Regulatory Framework

Barring exceptions not applicable here, the Alabama Department of Human Resources investigates most reports of suspected child abuse and neglect.  *See* Ala. Code § 26-14-6.1. Through its statutory authority, the Alabama Department of Human Resources has established regulations and procedures for investigating and disposing of child abuse reports and for reviewing, recording, and disclosing the outcomes of investigations.  *See* Ala. Code § 26-14-12; *see also* Ala. Admin. Code r. 660-5-34-.01 *et seq.*  "Once a report of suspected child abuse/neglect has been received, it must be investigated, and the investigation is known by DHR as the child abuse/neglect child abuse neglect (CA/N) assessment."  Ala. Admin. Code r. 660-5-34-.04(4).

An investigation by the Alabama Department of Human Resources must include: the nature, extent, and cause of the child abuse or neglect; the identity of the person responsible; the names and conditions of other children in the home; an evaluation of the parents or person

---

[3] Plaintiff voluntarily struck paragraph 22 of her Amended Complaint (Doc. 22 at p. 1; Doc. 18 at p. 14), which asserted that Defendants failed and/or refused to transmit her request for a hearing to the Office of Administrative Hearings.  (*See* Doc. 23).

responsible for the care of the child; the home environment and the relationship of the child or children to the parents or other persons responsible for their care; and all other data deemed pertinent. *See* Ala. Code § 26-14-7; *see also* Ala. Admin. Code r. 660-5-34-.05. After completion of the investigation, the investigating social worker "must arrive at a disposition as to whether the child has experienced abuse/neglect and whether the person identified as responsible for the abuse/neglect was actually responsible for the abuse/neglect." Ala. Admin. Code r. 660-5-34-.07. The social worker then must assign one of the following dispositions:

> (1) Indicated - This disposition is used when a preponderance of the credible evidence (e.g., eyewitness account, medical report, professional evaluation) and the professional judgment of the worker (based on facts gathered during the course of the CA/N assessment) indicate that abuse/neglect has occurred. Credible evidence means that the available facts, when viewed in light of surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected. ...

> (2) Unable to Complete ... .

> (3) Not Indicated - This disposition is used when a preponderance of the credible evidence and professional judgment does not substantiate that abuse/neglect has occurred. It is also used when credible evidence and professional judgment does not substantiate that the person allegedly responsible for the abuse/neglect was responsible for the abuse/neglect.

Ala. Admin. Code r. 660-5-34-.07; *see also* Ala. Code § 26-14-8(a). After a disposition is made, the county office submits a complete written report of the investigation and disposition to the Central Registry. *See* Ala. Code § 26-14-7(d); *see also* Ala. Code § 26-14-8; Ala. Admin. Code r. 660-5-34-.09.[4]

---

[4] "The Department of Human Resources is mandated to establish and maintain a statewide Central Registry for reports of child abuse/neglect. Each County Department will also establish and maintain a county registry which will contain the same information submitted to the State Central Registry." Ala. Admin. Code r. 660-5-34-.09(1).

"All persons allegedly responsible for abuse/neglect with substantiated (i.e., indicated) CA/N dispositions must be given an opportunity to disagree with the Department's findings through either a CA/N hearing or an administrative record review." Ala. Admin. Code r. 660-5-34-.08(1).  The affected person "is given ten (10) departmental working days from the receipt of the notification to request a hearing or administrative record review," and if no such request is made within those ten days, "the person's opportunity for a hearing or record review is considered to be waived" and the "indicated" disposition is then entered onto the Central Registry. *See* Ala. Admin. Code r. 660-5-34-.08(4).  Based on the nature of their employment, some individuals—such as teachers, educators, and daycare workers—qualify for a CA/N hearing whereas others qualify only for an administrative record review.  *See* Ala. Code § 26-14-7.1; *see also* Ala. Admin. Code r. 660-5-34-.08(2)-(3).

A CA/N hearing "is an internal investigatory hearing that is fact finding in nature and designed to elicit the facts in an atmosphere that allows the person responsible for the abuse/neglect to contest the evidence presented against him [or her]." Ala. Admin. Code r. 660-5-34-.08(6).  The Alabama Department of Human Resources bears the burden of persuasion at the CA/N hearing, *see* Ala. Admin. Code r. 660-5-34-.08(6)(c), and the accused has the following rights:

    a. The right to present his case himself or be represented by legal counsel or any other person.

    b. The right to present written evidence, oral testimony, and witnesses.

    c. The right to be provided by the department a short and plain written statement of the matters asserted which will be presented at the hearing.

    d. The right to review and copy at cost any written or recorded statement made by the alleged perpetrator to departmental personnel in the course of the child abuse/neglect investigation. This request must be made prior to the date for the hearing.

e. The right to review and copy at cost, before or during the hearing, the written material and other evidence in possession of the department which will be placed into evidence at the hearing.

f. The right to inspect any exculpatory evidence which may be in the possession of departmental investigators, and the right to be informed of such evidence if known by departmental investigators before the hearing; provided, that a request for such evidence is made at least five working days prior to the date set for the hearing.

g. The right to review and copy at cost all non-confidential department documents pertinent to the case, including written policies and rights.

h. The right to cross-examine witnesses testifying at the hearing.

i. The right to request issuance of subpoenas to witnesses and compel attendance. This request must be received no later than ten calendar days prior to the hearing, unless a shorter time is agreed upon by the hearing officer.

j. The right to review and copy at cost all documents in the official hearing file maintained by the hearing officer.

k. The right to have a hearing officer appointed who shall be disinterested, fair, and impartial.

Ala. Code § 26-14-7.1.

An administrative record review, on the other hand, "is completed to determine if the CA/N assessment contains sufficient documentation based on a preponderance of credible evidence to support the 'indicated' disposition of child abuse/neglect."  Ala. Admin. Code r. 660-5-34-.08(3). "Administrative record reviews are conducted by [DHR] staff who are not involved with the case. Prior abuse/neglect reports involving the person allegedly responsible are considered during the record review process to assist in determining the disposition.  The reviewers have the authority to overturn the dispositional finding of the worker and supervisor, and their decision is final." Ala. Admin. Code r. 660-5-34-.08(7).

Once an "indicated" disposition is entered on the Central Registry, it is confidential but may be released under certain circumstances to employers, prospective employers, and licensing/ certifying agencies. *See* Ala. Code § 26-14-8(c), (d) and Ala. Admin. Code r. 660-5-34-.08(4); *see also* Ala. Admin. Code r. 660-5-34-.09(5). Only limited procedures are available to expunge "indicated" findings from the Central Registry. *See Collier v. Buckner*, 303 F. Supp. 3d 1232, 1244 (M.D. Ala. 2018) and Ala. Admin. Code r. 660-5-34-.09(5)(i)-(j) (procedures for the expungement of listings); *see also* Ala. Code § 26-14-3(e) ("[I]f any agency or authority investigates any report pursuant to this section [pertaining to reports by mandatory reporters] and the report does not result in a conviction, the agency or authority shall expunge any record of the information or report and any data developed from the record.").

## IV.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss an action for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In order to survive dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Iqbal,* 556 U.S. at 680; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High*

*Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted).  Establishing facial plausibility, however, requires more than stating facts that establish mere possibility.  *Mamani,* 654 F. 3d at 1156 ("The possibility that—*if* even a possibility has been alleged effectively—these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original).  A plaintiff instead is required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible."  *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the complaint, exhibits attached to the complaint, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *but see Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (A "court may consider a document attached to a motion to dismiss ... if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged. ... [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]") (citation omitted). When considering a motion to dismiss, the court must accept all of the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  The court need not, however, accept legal conclusions couched in the form of factual allegations.  *See Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019).

### V.        Discussion

#### A.        Section 1983 Claim—Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To bring a due process claim under section 1983, a plaintiff must establish '(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'"  *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1035 (11th Cir. 2022) (citation omitted).  A constitutional violation actionable under Section 1983 arises "only when the state refuses to provide a process sufficient to remedy the procedural deprivation."  *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).  "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."  *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).

When determining if a plaintiff has stated a valid procedural due process claim, courts "look to whether the available state procedures were adequate to correct the alleged procedural deficiencies."  *Id*.  "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process. ...  And, to be adequate, the state procedure need not provide all the relief available under section 1983.  Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due."  *Id*. (citations omitted); *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) ("It is a well-settled principle of law that 'the state may cure a procedural deprivation by providing a later procedural remedy.'") (citation omitted).

1.      **Standing**

"Article III of the Constitution limits the subject-matter jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019) (citing U.S. Const. Art. III, § 2).  The Supreme Court has explained that

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citations and footnote omitted).  "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted."  *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citation omitted). "[E]ach element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.'"  *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (citation omitted).

"[W]hen lack of standing is raised in a motion to dismiss, the issue is properly resolved by reference to the allegations of the complaint."  *Id*.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Lujan*, 504 U.S. at 561 (citation omitted).  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999).

Because "'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past,'" "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church*, 30 F.3d at 1337 (citation omitted and emphasis in original). "So a plaintiff seeking declaratory or injunctive relief must allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical or conjectural—threat of *future* injury.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Church*, 30 F.3d at 1337). "Article III standing must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).

The factual allegations in the Amended Complaint are virtually identical to those made in *N.M. v. Buckner*, No. 2:22-cv-442, 2023 WL 2876166 at *5 (M.D. Ala. Apr. 10, 2023), where the court found that the plaintiffs had standing to seek prospective relief regarding their "indicated" status:

> The Plaintiffs have asserted facts from which it could reasonably be inferred that they face a real, concrete threat of future injury. They are the subjects of *indicated* dispositions that are *currently* listed on the Central Registry. Per their allegations, they have been and continue to be deprived of a due process hearing to challenge those *indicated* dispositions. Aside from the administrative record review process, there are no procedures under Alabama law by which non-educators like the Plaintiffs could ever challenge the validity of an *indicated* disposition. Except for the opportunity for an administrative record review, which has already passed and which the Plaintiffs contend is constitutionally insufficient, it is already a legal certainty that Alabama law and ADHR regulations and policies afford the Plaintiffs no opportunity to challenge the validity of their *indicated* statuses.
>
> Further, the Plaintiffs allege that their *indicated* statuses will likely be released to prospective employers or to their children's schools and other organizations conducting extracurricular children's activities at which they wish to volunteer. They also allege that they are or imminently will be deprived opportunities to engage in activities and pursuits available to other citizens, such as employment, volunteering, and involvement in their and other children's educational and extracurricular activities. Therefore, the Plaintiffs seek prospective relief to prevent future injury to their constitutionally protected liberty interests, which include "the

> right of the individual to contract, to engage in any of the common occupations of life [...] to establish a home and bring up children, [...] and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). Accordingly, with respect to claims for prospective relief from their *indicated* status, the Plaintiffs have sufficiently pleaded facts showing that they face a real, immediate, concrete threat of injury; that the threatened injury is fairly traceable to Buckner and Mashego's failure to provide them with a sufficient opportunity to contest their *indicated* status; and that declaratory and injunctive relief are capable of relieving the injury.

*Id*. The court additionally noted in *N.M.* that the underlying factual allegations were virtually identical to allegations made by plaintiffs found in other cases to have Article III standing. *Id*. (citing *Byrd v. Buckner*, No. 2:18-cv-122, 2020 WL 2046375 (M.D. Ala. Apr. 28, 2020), *Collier v. Buckner*, 303 F. Supp. 3d 1232 (M.D. Ala. 2018), and *Thomas v. Buckner*, No. 2:11-cv-245, 2012 WL 3978671 (M.D. Ala. Sept. 11, 2012)). Seeing no reason to depart from those authorities, the court found that the plaintiffs in *N.M.* had standing to seek prospective relief. *Id*. Likewise, the court now adopts the reasoning articulated in *N.M.*, *Thomas*, *Collier*, and *Byrd* to support its conclusion that Plaintiff has standing to seek prospective relief in this action.

### 2.  Liberty Interest

Plaintiff alleges that she has been stigmatized, slandered, and defamed as a result of her listing on the Central Registry. (Doc. 18 at pp. 7, 14-15). Plaintiff further alleges that her listing on the Central Registry is subject to future disclosure and associated defamation, slander, libel, and stigma. (*Id*.). Plaintiff thus contends that her listing on the Central Registry results in the deprivation of a constitutionally protected liberty interest and satisfies the "stigma-plus" test of *Paul v. Davis*, 424 U.S. 693 (1976). (Doc. 24 at pp. 31, 37).

"In *Paul v. Davis* the Supreme Court held that defamation by the government, standing alone and apart from any other governmental action, does not constitute a deprivation of liberty or property under the Fourteenth Amendment," establishing "what has come to be known as the

'stigma-plus' test." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001)

(citing *Paul*, 424 U.S. at 694).  Under the "stigma-plus" test, "a plaintiff claiming a deprivation

based on defamation by the government must establish the fact of the defamation 'plus' the

violation of some more tangible interest before the plaintiff is entitled to invoke the procedural

protections of the Due Process Clause." *Id*.  The Eleventh Circuit has summarized what is required

to satisfy the stigma-plus test, stating: "'To establish a liberty interest sufficient to implicate the

fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized

in connection with a denial of a right or status previously recognized under state law.'" *Behrens*

*v. Regier*, 422 F.3d 1255, 1260 (11th Cir. 2005) (citation omitted); *Cypress Ins. Co. v. Clark*,

144 F.3d 1435, 1436-37 (11th Cir.1998) ("This rule, labeled the 'stigma-plus' standard, requires a

plaintiff to show that the government official's conduct deprived the plaintiff of a previously

recognized property or liberty interest in addition to damaging the plaintiff's reputation.").

Defendants contend that Plaintiff has failed to assert a deprivation of a constitutionally

protected liberty interest because she does not allege public disclosure to any third parties.

(Doc. 20 at pp. 8-9).  In addition, Defendants argue that Plaintiff has failed to plead or show a

tangible injury sufficient to establish the "plus" prong of the "stigma-plus" test.  (*Id*. at pp. 9-11).

The same arguments were recently rejected in *N.M.*:

> It is true that the Plaintiffs do not allege that any known third-party has accessed
> the Central Registry and viewed their *indicated* status, but they do allege that their
> indicated status has been placed (or published) on the Central Registry where it is
> available to be seen by those third-parties who are permitted by regulation to view
> that information.  But such an assertion is not required here, since the Plaintiffs
> seek declaratory and injunctive relief with the purpose and intent to prevent *future*
> harm.  *See Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)
> ("Equitable relief is a prospective remedy, intended to prevent future injuries.").
> This same argument was rejected by the *Collier* court upon almost identical facts.
> *See* 303 F. Supp. 3d at 1251-55, 1265-67 (focusing on the potential threat of harm
> faced by plaintiffs due to their indicated status as published on the Central

Registry). The Court finds the *Collier* reasoning persuasive and equally applicable here.

To be sure, an indicated disposition for and allegation of child abuse is stigmatizing. *See Siegelman*, 322 F.3d at 1296. However, stigma alone is not sufficient to establish a constitutional deprivation of a protected liberty interest that warrants due process protections. The Plaintiffs must also show that "a right or status previously recognized by state law was distinctly altered or extinguished" in connection with the stigma. *See id*. at 1296-97.

And here, Buckner and Mashego argue, as they have in other cases, that the Plaintiffs have not alleged sufficient facts to meet the "plus" aspect of the stigma-plus test. They contend that the Plaintiffs have not suffered a tangible deprivation because they have not alleged that they have been discharged, demoted, or rejected from a job due to information on the Central Registry, that they have lost custody of their children, or that they have lost any state-provided licenses. Buckner and Mashego argue that the Plaintiffs merely allege speculative fears or concerns that may arise from being listed on the Central Registry.

Contrary to the Defendants' assertions, the Plaintiffs have sufficiently alleged *distinct alterations* of their rights, not simply fears and concerns that their rights may be lost. For example, the Plaintiffs' right to family integrity have been distinctly altered by their inclusion on the Central Registry as child abusers. They allege that they intend to be active in their children's lives and will volunteer with and participate in public and private institutions that provide academic, educational, athletic, social, civil, sports-related, and other services for minor children including their own. (Doc. 15 at 9.) They further allege that their listing will likely be released to prospective employers or to their children's schools or other organizations conducting extra-curricular children's activities at which they wish to volunteer. (*Id*. at 10.) Their rights to family integrity are distinctly altered because it is more difficult for them to participate in their children's lives, especially in today's society where it is common practice for schools and organizations catering to children to require background checks (even if not statutorily required). *See Collier*, 303 F. Supp. 3d at 1266; *Thomas*, 2012 WL 3978671, at *5-8. Having *indicated* dispositions on the Central Registry makes it highly unlikely that the Plaintiffs will be permitted to volunteer and participate to the fullest measure contemplated by this nation's notions of liberty and family integrity.

The Plaintiffs do not simply claim that they have a liberty interest in not being labeled as child abusers. They allege much more. They are adults and more importantly, parents. They are presently engaging in parenting and working. The stigma associated with being labeled as a child abuser affects the Plaintiffs' right to establish a home and bring up children and the right to family integrity, all of which are well-established liberty interests worthy of the constitutional protection of

procedural due process.  *See Meyer*, 262 U.S. at 399; *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

The Plaintiffs have sufficiently satisfied the stigma-plus test, at least with respect to the right of family integrity.  Accordingly, the motion to dismiss is due to be denied to the extent the Defendants assert the Plaintiffs' inability to satisfy that test.

*N.M.*, 2023 WL 2876166 at *6-7 (emphasis in original).

The court finds the reasoning in *N.M.*, along with that expressed in *Collier* and *Thomas*, to be equally applicable here.  Plaintiff alleges that she intends to be involved in her minor child's life and intends to volunteer with public and private institutions that provide academic, educational, athletic, social, civic, sports-related, and other services and opportunities for minor children.  (Doc. 18 at p. 7).  Plaintiff also alleges that she is currently listed on the Central Registry and that the listing will likely be released to third parties in connection with aforementioned activities.  (*Id*. at p. 8).  Plaintiff therefore has sufficiently satisfied the stigma-plus test.

### 3.    Exhaustion

Defendants contend that Plaintiff cannot show constitutionally inadequate procedures and that Plaintiff failed to avail herself of the procedures that do exist.  (Doc. 20 at p. 11).  Plaintiff argues that as a non-educator she does not fall into the category of persons who are entitled to a CA/N hearing and that Defendants, pursuant to their statutory authority, established a custom or policy in which only administrative record reviews are given.  (Doc. 24 at pp. 13-14, 22, 38-39; Doc. 18 at pp. 3-4, 8-11).  Plaintiff asserts that she requested a hearing in response to the "indicated" finding but was only given an administrative record review, that the "indicated" finding was placed on the Central Registry without a hearing, and that she has no means by which to remove the "indicated" finding from the Central Registry.  (Doc. 18 at pp. 6, 13; Doc. 18-1 at pp.1-2; Doc. 24 at pp. 6-10, 13-15, 38).  Plaintiff additionally asserts that she is in the same position as other plaintiffs who have previously litigated such issues.  (Doc. 24 at p. 38).

In support of her argument, Plaintiff cites the following from the *Thomas* court:

> Defendants argument that plaintiffs failed to take advantage of adequate state procedures is unpersuasive. ... Defendants' argument that Plaintiffs could have filed suit in state court ignores the heart of Plaintiffs' claims. Under Alabama Administrative Code 660-5-34.0[8](1), all persons with indicated dispositions "must be given an opportunity to disagree with [DHR's] findings through either a CA/N hearing or an administrative record review." Plaintiffs allege that Defendants, pursuant to their statutory authority, established a custom or policy in which only administrative record reviews are given and all CA/N hearings are denied.
>
> ... The reviewer looks to the initial assessment to determine if it "contains sufficient documentation based on a preponderance of credible evidence to support the 'indicated' disposition of child abuse/neglect." Administrative Code 660-5-34.0[8](3). Thus, upon this decision being made final, Plaintiffs have had no other procedure by which to remove their names from the central registry. The procedures listed by Defendants do not provide Plaintiffs with a way to seek removal of their names from the central registry. Furthermore, Plaintiffs did take advantage of the procedures available to them. Ms. Ponder and Ms. Thomas asked for a hearing, but were only given an administrative record review, and received no response regarding their request for a hearing.

*Thomas*, 2012 WL 3978671 at *8. The court in *N.M.* similarly found that the allegations were

"sufficient to plausibly show *at this stage* that the procedures [were] constitutionally inadequate"

and that dismissal was not appropriate:

> Finally, Buckner and Mashego argue that the Plaintiffs failed to take advantage of the available state procedures to remedy their alleged injury—by filing a suit in state court to compel the performance of a legal duty, to enjoin the enforcement of an unconstitutional law, or to compel the performance of a ministerial act, or by bringing a suit under the Declaratory Judgment Act. Accordingly, Buckner and Mashego assert that the Plaintiffs failed to exhaust their state remedies. This argument ignores the heart of the Plaintiffs' claims. Like the plaintiffs in *Thomas*, the Plaintiffs plead that Buckner and Mashego have established a system whereby the above-delineated administrative review is the only available remedy to address one's *indicated* status if one is not eligible for a CA/N hearing. 2012 WL 3978671 at *8. Besides, Buckner and Mashego even concede that additional procedures may not even be available to the Plaintiffs at least under the Alabama Administrative Procedures Act if their case is not a "contested case." (Doc. 18 at 11 n.5; Doc. 31 at 10-11.) Accordingly, and solely for purposes of the Defendants' motion to dismiss, the Defendants have not yet shown that Count One is due to be dismissed for failure to exhaust available state remedies.

*N.M.*, 2023 WL 2876166 at *7 (emphasis in original).  The court adopts the reasoning in *N.M.* and *Thomas* in concluding that Plaintiff's § 1983 claims are <u>not</u> due to be dismissed at this stage.[5]

### B.   Negligence and Wantonness Claims

Defendants contend that Plaintiff lacks standing to assert claims for negligence and wantonness because she has not suffered an injury in fact.  (Doc. 20 at p. 12).  To establish standing in the context of Article III to pursue claims for monetary damages, a plaintiff must satisfy three requirements: "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'  Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan*, 504 U.S. at 560-61 (citations, internal quotation marks, and footnote omitted); *see also Collier*, 303 F. Supp. 3d at 1250.

Plaintiff seeks monetary damages from Defendants in their individual capacities on grounds that being listed on the Central Registry defamed, slandered, libeled, and stigmatized her as a child abuser.  (Doc. 18 at ¶ 25).  Virtually identical allegations were made in *N.M.*—but

---

[5] In *N.M.*, the court clarified that its decision should not be construed as a finding that the administrative record review process was constitutionally inadequate as in *Collier* and *Thomas*. *N.M.*, 2023 WL 2876166 at *7 n.4.  ("It appears that, at the point he ruled in both cases, the parties failed to thoroughly address, if they did at all, the issue of whether the plaintiffs could challenge their indicated dispositions after an administrative record review through an appeal under the Alabama Administrative Procedure Act or a common law writ of certiorari or mandamus filed in the Circuit Court of Montgomery County, Alabama. The Court expects the parties to thoroughly address that issue in subsequent motion practice in this case.").  Because the filings in this action are very similar to the corresponding filings in *N.M.*, the court will follow the wisdom of *N.M.* Stated differently, at this stage of the proceedings, the court's decision should not be construed as a finding that the administrative record review process is constitutionally inadequate.

the court found that "[t]he Plaintiffs allege no quantifiable concrete injuries at this point in time, aside from the fact that their names are listed on the Central Registry," that "the Plaintiffs provide no specification or detail whatsoever as to the recipient, if anyone, of any negative information against them," and that "[the Plaintiffs] do not allege that they have already suffered any compensable injury from the fact that their names are listed on the Central Registry or from the disclosure of their indicated dispositions to third parties." *N.M.*, 2023 WL 2876166 at *8. The same is true here, and Plaintiff's allegations are insufficient to establish standing to pursue state law tort theories for monetary damages. *See id.*; s*ee also Byrd*, 2020 WL 2046375 at * 8 and *Collier*, 303 F. Supp. 3d at 1250, 1275. Accordingly, Plaintiff's negligence and wantonness claims against Defendants in their individual capacities are due to be dismissed.[6]

## VI.   Conclusion

For the reasons set forth above, it is hereby **ORDERED** that the pending Motion to Dismiss (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- this action shall be permitted to proceed on the First Cause of Action wherein Plaintiff seeks injunctive and declaratory relief against Defendants in their official capacities; and

- the Second Cause of Action wherein Plaintiff asserts state law claims for negligence and wantonness against Defendants in their individual capacities is dismissed without prejudice.

**DONE** this the 31st day of August 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] Given its conclusion on the issue of standing, the court need not reach Defendants' alternative arguments for dismissing the negligence/wantonness claims.